J9IAACAOC                    Conference

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    JIN MING CAO, ET AL.,

4                    Plaintiffs,

5            v.                              19 CV 925 (GHW)

6    JOY LUCK PALACE, INC., ET AL.,

7                    Plaintiffs.

8    ------------------------------x
                                            New York, N.Y.
9                                           September 18, 2019
                                            2:30 p.m.
10
     Before:
11
                         HON. GREGORY H. WOODS,
12
                                            District Judge
13
                              APPEARANCES
14
     CATHOLIC MIGRATION SERVICES
15        Attorneys for Plaintiffs
     BY:  DAVID COLODNY
16   THOMAS J. POWER

17

18

19

20

21

22

23

24

25

1    (Case called)

2        MR. POWER:  Thomas Joseph Power, for the plaintiffs.

3        MR. COLODNY:  David Colodny, also from Catholic

4    Migration Services, for the plaintiffs.

5        THE COURT:  Good.  Thank you very much.

6        First, let me note for the record that no defendant is

7    here and no representative of any defendant is here.

8        Counsel for plaintiffs, any additional information

9    regarding the whereabouts of defendants?  Do they intend to in

10   particular to whether or not they intend to contest this

11   litigation?

12       MR. POWER:  We have no additional information, your

13   Honor.

14       THE COURT:  Thank you.

15       Counsel, is there anything that you'd like to add to

16   the written submissions that you roadside to the Court the

17   prior order the supplement am submissions to the Court

18   following our prior conference or any other written submissions

19   to the Court?

20       MR. POWER:  Your Honor, there is one aspect.  When we

21   in the revised proposed default judgment we referred to

22   attorneys fees and costs.  Unintentionally omitted that

23   defendants would be jointly and severally liable for those

24   attorneys fees an costs the.  We would either respectfully

25   request to add that or if the Court is willing, if the Court

1    would add that.

2              THE COURT:  Thank you.  Good.  Understood.

3              Another thing that I did not see in the application,

4    counsel, was the hourly billable rate that lied behind your

5    application for fees.  I reverse engineered it assuming that

6    each of your hourly rates were the statement.  Can you make a

7    proffer regarding the hourly rate reflected in the amount that

8    you requested?

9              MR. POWER:  Yes.  The hourly rate I believe is

10   included in my memorandum annexed to motion for default

11   judgment.  For Mr. Colodny we've asked $425 per hour and for

12   myself, Mr. Power, I believe the rate was $225 per hour.

13             THE COURT:  Thank you.  Fine.  Good.

14             Anything else to discuss, counsel, before I rule on

15   the application?

16             MR. POWER:  We have nothing further, your Honor.

17             THE COURT:  Thank you.

18             Please be bear me.  I will review my thought on the

19   application now.  I am going to grant the application.  I'd

20   like to make a matter of record my analysis.

21   I.                      INTRODUCTION

22             We are here today for a hearing in response to an

23   order to show cause why default judgment should not be entered

24   against Joy Luck Palace, Inc. ("Joy Luck Palace" or the

25   "Restaurant"), Yong Jin Chan, Tak M. Yee, Patrick Mock, which

1   is at times spelled M O C K and at other times M O K and Qing

2   Wen Chen who is also known as Tony Chen (the "Employer

3   Defendants").  For purposes of today's conference, I will refer

4   to those parties collectively as the "Defendants."  I will

5   begin by providing a brief summary of the factual and

6   procedural history of this action.

7   II.                      BACKGROUND

8           The plaintiffs in this case were all employed by

9   Defendant Joy Luck Palace, a dim sum restaurant in Chinatown.

10  During Plaintiffs' employment, Defendants (a) failed to pay

11  Plaintiffs for all the hours that they worked; (b) failed to

12  pay the minimum wage for each hour worked; (c) failed to pay

13  overtime compensation for each hour exceeding 40 per week; (d)

14  failed to pay the spread-of-hours compensation; (e) failed to

15  provide a uniform or pay uniform maintenance; (f) failed to

16  provide Plaintiffs with complete and accurate paystubs; and (g)

17  failed to provide Plaintiffs with a correct wage notice upon

18  hiring.

19          Plaintiffs filed their Amended Complaint on February

20  15, 2019, asserting violations of the Fair Labor Standards Act

21  ("FLSA") and the New York Labor Law ("NYLL").  Plaintiffs'

22  First Amended Complaint ("FAC"), Dkt. No. 19.  By April 1,

23  2019, the Amended Complaint had been served on all Defendants.

24  As of this afternoon, no Defendant has appeared, answered, or

25  otherwise responded to the Amended Complaint.  The Clerk of

Court issued certificates of default as to each Defendant on

May 7, 2019.  Accordingly, Defendants are in default.

On July 15, 2019, Plaintiff filed a proposed order for

default judgment.  Dkt. No. 18.  On that date, the Court issued

an order to show cause why default judgment should not be

entered and scheduled a hearing on Plaintiff's motion for

today.  Any opposition to plaintiff's motion for a default

judgment was due no later than August 8, 2019.  Id.  Defendant

has not opposed Plaintiff's motion or otherwise appeared in

this case.

III.                         DISCUSSION

A.                         Legal Standard

"When a party against whom a judgment for affirmative

relief is sought has failed to plead or otherwise defend, and

that failure is shown by affidavit or otherwise, the clerk must

enter the party's default."  Fed. R. Civ. P. 55(a).

In light of Defendants' default, the Court accepts the

factual allegations in the complaint as true, except those

relating to damages, and draws all reasonable inferences in

plaintiff's favor.  See Finkel v. Romanowicz, 577 F.3d 79, 84

(2d Cir. 2009).  Nevertheless, the Court is required to

determine whether plaintiff's allegations establish liability

as a matter of law, see id., and "has discretion under Rule

55(b)(2) once a default is determined to require proof of

necessary facts and need not agree that the alleged facts

1    constitute a valid cause of action," Au Bon Pain Corp. v.

2    Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981).

3              I will first address threshold jurisdictional matters

4    and then I will address the merits of Plaintiff's claims.

5    B.                              Subject Matter Jurisdiction

6              The Court has subject matter jurisdiction over this

7    action pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims

8    are under the Fair Labor Standards Act, a federal statute.  The

9    Court has supplemental jurisdiction over Plaintiffs' New York

10   Labor Law claims pursuant to 28 U.S.C. § 1367(a).

11   C.  Personal Jurisdiction over the Defendants

12             "Before a court grants a motion for default judgment,

13   it may first assure itself that it has personal jurisdiction

14   over the defendant . . . "Sinoying Logistics Pte Ltd. v. Yi Da

15   Xin Trading Corp., 619 F.3d 207, 213 (2d Cir. 2010) (citations

16   omitted).  "Normally, a plaintiff has the burden of proving

17   personal jurisdiction in a case where a defendant appears and

18   contests such jurisdiction."  "R" Best Produce, Inc. v.

19   DiSapio, 540 F.3d 115, 126 (2d Cir. 2008).  "On a motion for a

20   default judgment, although the plaintiffs retain the burden of

21   proving personal jurisdiction, they can satisfy that burden

22   with a prima facie showing, and may rest their argument on

23   their pleadings, bolstered by such affidavits and other written

24   materials as they can otherwise obtain."  NYKCool A.B. v. Pac.

25   Int'l Servs., Inc., 66 F. Supp. 3d 385, 392 (S.D.N.Y. 2014)

1    (internal quotation marks and citation omitted).

2            Here, Plaintiffs has made a prima facie showing that

3    the Court has personal jurisdiction over Defendants.

4    Plaintiffs allege that Joy Luck Palace is incorporated in New

5    York and has its principal place of business in New York City.

6    FAC  9.  Further, Plaintiffs allege that the Employer

7    Defendants were owners and managers working at and employing

8    Plaintiffs at the Restaurant.  FAC  15-16, 20-21, 27, 32-33.

9    And Defendants were all served with process by personal service

10   between March 4, 2019 and April 1, 2019.  Dkts. No. 27-31.

11   Therefore, I am satisfied that plaintiffs have personal

12   jurisdiction over defendant.  See Murphy v. Bros., Inc. v.

13   Michetti Pipe Stringing, Inc., 526 U.S. 344, 350 (1999) (noting

14   that service of process brings a domestic defendant under the

15   court's jurisdiction).

16   D.  Defendant's Liability

17           Although a party's default is deemed to constitute a

18   concession of all well pleaded allegations of liability in the

19   complaint, as noted, the district court must consider whether

20   the unchallenged facts constitute a legitimate cause of action,

21   since a party in default does not admit conclusions of law.

22   With respect to damages, a court need only determine whether a

23   plaintiff has proffered sufficient evidence to establish

24   damages "with reasonable certainty."  Transatlantic Marine

25   Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111

1    (2d Cir. 1997).

2    a.   FLSA Coverage

3         As an initial matter, accepting the facts asserted in

4    the complaint as true, as the Court must, I find that

5    Plaintiffs were employees for purposes of the FLSA.  Looking to

6    the "economic reality" of the working relationship, Plaintiffs'

7    work was fully controlled by Defendants.  See Pineda v. Tokana

8    Cafe Bar Restorant Inc., 2017 WL 1194242, at *2 (S.D.N.Y. Mar.

9    30, 2017) (collecting cases).  I also find that the complaint

10   adequately established that the Employer Defendants were

11   employers of Plaintiffs for FLSA purposes.  Id.  According to

12   the complaint, Yong Jin Chan, Tak M. Yee, and Patrick Mock

13   exercised "significant control over Plaintiffs' employment,

14   including the power to hire, fire, and control the terms of

15   their employment." FAC  11.  Additionally, Defendants "also had

16   the power to establish Plaintiffs' wages, set their work

17   schedules, and maintain their employment records."  FAC  17-18,

18   22, 24, 29-30.  Qing Wen Chen is alleged to have "had the power

19   to hire and fire Restaurant employees and exercised [this]

20   power over [several] workers."  FAC  33-34.

21   In addition, the FLSA "overtime provisions apply to employees

22   who are '(1) personally engaged in interstate commerce . . . or

23   (2) [were] employed in an enterprise engaged in interstate

24   commerce or in the production of goods for interstate

25   commerce."  Santana v. Latino Express Restaurants Inc., 198 F.

Supp. 3d 285, 291 (S.D.N.Y. 2016) (quoting Rodriguez v.

Almighty Cleaning, Inc., 784 F. Supp. 2d 114, 120 (E.D.N.Y.

2011).  While in operation between January 2016 and August

2018, Joy Luck Palace was an enterprise engaged in interstate

commerce as a restaurant selling Chinese food for consumption

on the premises.  FAC  2 12-14.  See Khurana v. JMP USA, Inc.,

2017 WL 1251102, at *4 (E.D.N.Y. Apr. 5, 2017) (inferring an

interstate nexus based "upon the factual allegations that the

Corporate Defendant operated a gas station and that Plaintiff

worked as a clerk selling gasoline to customers-a product

reasonably presumed to have originated, at least in part,

outside of New York State").  Further, Joy Luck Palace grossed

more than $500,000 in the fiscal year prior to the filing of

the complaint, which is also a requirement or showing that

establishes enterprise coverage under the FLSA.  FAC  14.

b.  NYLL Coverage

        "The definition of 'employer' is similarly expansive

under New York law, encompassing any 'person employing any

employee.'" Kuhnmuench v. Phenix Pierre, LLC, 2018 WL 1357383,

at *4 (S.D.N.Y. Mar. 15, 2018) (quoting Doo Nam Yang v. ACBL

Corp., 427 F. Supp. 2d 327, 342 (S.D.N.Y. 2005)).

        As a result, courts have interpreted the definition of

"employer" under the New York Labor Law coextensively with the

definition used by the FLSA.  Jiao v. Shi Ya Chen, 2007 WL

4944767, at *9 (S.D.N.Y. Mar. 30, 2007).  Therefore, I find

that Defendants were employers of Plaintiff under the NYLL as

well as demonstrated by the facts pleaded in the complaint.

Id.

c.  Minimum Wage Violations under the FLSA and NYLL

        Plaintiffs have alleged that their compensation was

routinely less than the applicable minimum wage rate.  See,

e.g., FAC 69-86; Cao Decl., Dkt. No. 58,  8-12.  Some weeks,

some Plaintiffs were not paid at all.  FAC  64-68.  Both the

FLSA and NYLL require that employers pay their employees

specified minimum hourly wages. 29 U.S.C. § 206; N.Y. Lab. Law

§ 652.

        "In a FLSA case, in the absence of rebuttal by

defendants, plaintiffs' recollection and estimates of hours

worked are presumed to be correct."  Laboy v. Office Equipment

& Supply Corp., 2016 WL 5462976, at *3 (S.D.N.Y. Sept. 29,

2016).  Similarly, under the NYLL, "employers who fail to

maintain appropriate records 'bear the burden of proving that

the complaining employee was paid.'"  Santana v. Latino Express

Restaurants, Inc., 2016 WL 4059250, at *4 (S.D.N.Y. July 28,

2016).  According to the Second Circuit in Bricklayers v.

Moulton Masonry & Construction, LLC, a district court may rely

on a complaint along with any "uncontroverted documentary

evidence submitted by plaintiffs" to the defaulting party's

liability.  779 F.3d 182, 189 (2d Cir. 2015).

Plaintiffs Jin Ming Cao, Zhou Ji Zou, Jian Min Wu, Ming Jian

1   Feng, Qi Wen Huang, Shun Lai Mei, Wai Fong Cheong, Pei Yun

2   Chen, Wood Chong Lee, Yan Hua Liu, Wei Guo Cen, Zhi Hui Liu,

3   Jie Fang Ye, Chang Sheng Li, and Zhuo Zhong Lao were "tipped

4   employees" under the FLSA, which defines a "tipped employee" as

5   an "employee engaged in an occupation in which he customarily

6   and regularly receives more than $30 a month in tips."  29

7   U.S.C. § 203(t).  To the extent that those plaintiffs received

8   tips, they have further alleged that Defendants are not

9   entitled to a tip credit because they did not notify Plaintiffs

10  in accordance with the applicable legal provisions of the NYLL,

11  or of Defendants' intention to claim a tip credit against their

12  minimum wage obligations to reduce the applicable minimum wage.

13  12 N.Y.C.R.R. § 146-1.3; 12 N.Y.C.R.R. § 146-2.2.  Accepting

14  these unrebutted recollections as true, I find Defendants

15  established to be liable for a violation of the FLSA and NYLL

16  for failure to pay Plaintiffs their minimum wage.

17  d.  Overtime Violations of the FLSA and NYLL

18         Plaintiff next alleges violations of the overtime

19  provisions of the FLSA and NYLL.  The FLSA and NYLL require

20  employers to pay employees one and one-half times the minimum

21  wage for any hours over forty in a given week.  29 U.S.C. §

22  207(a)(1); 12 N.Y.C.R.R. § 142-2.2.

23  Plaintiffs allege that they were not paid proper overtime

24  wages, in violation of the FLSA and NYLL.  Because Plaintiffs

25  have provided unrebutted recollections and estimates of the

hours they worked, and their allegations that they were not

paid overtime is deemed admitted, they have satisfied their

burden for establishing liability.

e.  Wage Notice and Pay Rate Notice Violations of NYLL

        Section 195(1) of the NYLL requires that a wage notice

be provided at the time of hiring that contains certain

categories of information, including rate of pay.  Section

195(3) of the NYLL requires provision of a statement with every

payment of wages, listing certain information, including the

dates of work covered by that payment of wages, net wages, and

the regular hourly rate of pay and overtime rate of pay.  Under

NYLL, "If any employee is not provided within ten business days

of his or her first day of employment a notice as required by

subdivision one of section one hundred ninety-five of this

article, he or she may recover in a civil action damages of

fifty dollars for each work day that the violations occurred or

continue to occur, but not to exceed a total of five thousand

dollars, together with costs and reasonable attorney's fees."

N.Y. Labor Law 198(1-b).  Further, "If any employee is not

provided a statement or statements as required by subdivision

three of section one hundred ninety-five of this article, he or

she shall recover in a civil action damages of two hundred

fifty dollars for each work day that the violations occurred or

continue to occur, but not to exceed a total of five thousand

dollars, together with costs and reasonable attorney's fees."

1    N.Y. Labor Law § 198(1-d).

2         Plaintiff allege that Defendants failed to provide

3    them in writing-in English and in Plaintiffs' primary

4    language-with the notice required by N.Y. Labor Law § 195(1)(a)

5    either at the time of their hire or during their employment.

6    See Dkt. Nos. 58; 59; 60; 61; 62; 63; 64; 65; 66; 67; 68; 69;

7    70; 71; 72; 73; 74; 75; 76.

8         Additionally, Plaintiffs alleges that they did not

9    receive written notice reflecting the correct number of hours

10   worked and actual wages paid on their pay stubs as required by

11   N.Y. Labor Law § 195(3).  FAC  74.  FAC  91. Some Plaintiffs'

12   paystubs also failed to show their pay rate.  FAC  91.

13   Accepting these allegations as true, as the Court must,

14   Defendants are  liable for pay rate notice violations under the

15   NYLL.

16   f.  Spread of Hours Violations of NYLL

17        Under NYLL, if the spread of hours, that is "the

18   length of the interval between the beginning and end of an

19   employee's workday" exceeds 10 hours, that employee "shall

20   receive one additional hour of pay at the basic minimum hourly

21   rate."  12 N.Y.C.R.R. § 146-1.6.

22        Plaintiffs Jin Ming Cao, Zhuo Ji Zou, Jian Min Wu,

23   Ming Jian Feng, Qi Wen Huang, Shun Lai Mei, Wai Fong Cheong,

24   Pei Yun Chen, Wood Chong Lee, Yan Hua Liu, Wei Guo Cen, Zhi Hui

25   Liu, Jie Fang Ye, Chang Sheng Li, and Zhou Zhong routinely

1    worked shifts during which their spread-of-hours exceeded ten,

2    and allege that their compensation did not include an

3    additional hour of minimum wage pay when their spread of hours

4    exceeded ten.  FAC  132.  Accepting those allegations and

5    averments as true, Defendants are liable under the NYLL for

6    failure to pay Plaintiffs their spread of hours wages.

7    g.  Uniform Violations of NYLL

8            Under New York law, an employer is responsible for the

9    cost of purchasing and maintaining a required uniform.  12

10   N.Y.C.R.R. § 146-1.7.  The amount paid to the employee depends

11   on the number of hours worked.  Id.  A "required uniform"

12   refers to any "clothing worn by an employee, at the request of

13   an employer, while performing job-related duties" unless such

14   "clothing . . .  May be worn as part of an employee's ordinary

15   wardrobe." Id. at § 137-3.13.

16           Plaintiffs Jin Ming Cao, and Zhou Ji Zou, as captains,

17   had to wear a black jacket, black pants, black shoes, a white

18   shirt, and a tie.  FAC  93-94.  The black jacket was made of

19   "formal suit material" that would not be worn, according to

20   Plaintiff Cao, as part of someone's ordinary or "basic street

21   clothing," and required dry cleaning.  Cao Decl.  29-31.  The

22   Restaurant provided only one jacket to each employee.  FAC 93.

23   And Plaintiffs Cao and Zou had to dry clean the jacket at their

24   own expense.  Zou Decl.  22-26.  Because these two plaintiffs

25   have alleged that they worked over thirty hours per week, I

1   find that Defendants are liable for failing to pay the high

2   rate of their uniform maintenance costs as required by NYLL.

3   E.   Damages

4           In connection with the violations I just described,

5   Plaintiffs seek various categories of damages.  Generally, a

6   plaintiff must prove his claim for damages through the

7   submission of evidence.  In this case I have reviewed

8   Plaintiffs' evidence and find that it is unnecessary to hold a

9   hearing because I have determined (1) the proper rules for

10  calculating the various categories of damages claimed by

11  plaintiff, and (2) that Plaintiffs' evidence establishes, with

12  reasonable certainty, the basis for the damages specified in

13  the default judgment.

14  a.   Unpaid Wages (Minimum Wage, Overtime, and Spread of Hours

15  Compensation)

16          Plaintiffs computed the amount they should have been

17  paid each week, based on the minimum hourly wage rate for each

18  particular time period, the number of overtime hours Plaintiffs

19  worked in that time period, and the amount of spread of hours

20  pay Plaintiffs were owed for that time period.  I have reviewed

21  Plaintiffs' calculations, which are based on the alleged hours

22  worked by Plaintiffs, and the spreadsheet provided by

23  Plaintiffs and believe that they have each has established

24  their entitlement to these unpaid wages.

25  b.   Liquidated Damages

1      Plaintiffs seek, and are entitled to, payment of

2 liquidated damages under the NYLL.  I have reviewed the

3 calculations of that amount, which are based on the allegations

4 in the complaint, and the spreadsheet provided by counsel and

5 believe that Plaintiffs have established their entitlement to

6 liquidated damages from the defaulting Defendants.

7 c.  NYLL Statutory Penalties

8      Plaintiffs are entitled to an award of statutory

9 penalties under the NYLL.  Plaintiffs seek the maximum $5,000

10 for each of their wage notice and wage statement claims.  Given

11 that Plaintiffs allege violations throughout the entirety of

12 their employment, they are entitled to the maximum statutory

13 amount of $10,000 each for the wage notice and wage statement

14 violations under the NYLL.

15 d.  Prejudgment Interest

16      Plaintiffs each seek an award of prejudgment interest

17 on their NYLL's claims for unpaid wages.  New York law provides

18 for prejudgment interest at nine percent per annum.  N.Y.

19 C.P.L.R. § 5004.  New York law provides that "[w]here . . .

20 damages were incurred at various times, interest shall be

21 computed upon each item from the date it was incurred or upon

22 all of the damages from a single reasonable intermediate date."

23 N.Y. C.P.L.R. § 5001(b).  Plaintiffs have appropriately

24 calculated their applicable prejudgment interest from the

25 midpoint between the start and end dates for each plaintiff on

1    each of their minimum wage and overtime awards.  Plaintiffs

2    have calculated the applicable interest through September 12 or

3    13, 2019.

4    Counsel, of course today is September 18th.  Do you wish for

5    the Court to enter judgment based on your calculations through

6    September 13th or 18th?  Do you wish to provide updated

7    calculations for interest through today's date?

8                MR. POWER:  You Honor, for efficiency purposes, we

9    will consent to the prejudgment interest calculations through

10   September 12th and September 13th.

11               THE COURT:  Thank you.

12               I'm happy to do that on the consent of plaintiffs.

13   e.  Joint and Several Liability

14               Plaintiffs also seek to hold Defendants jointly and

15   severally liable for the periods of time during which different

16   Defendants employed Plaintiffs.  Both the FLSA and NYLL hold

17   employers liable for violations of labor law.  See Pineda v.

18   Tokana Cafe Bar Restorant Inc., 2017 WL 1194242, at *2;

19   Kuhnmuench v. Phenix Pierre, LLC, 2018 WL 1357383, at *4

20   (S.D.N.Y. Mar. 15, 2018) (quoting Doo Nam Yang v. ACBL Corp.,

21   427 F. Supp. 2d 327, 342 (S.D.N.Y. 2005)).  Accepting the

22   allegations in the Amended Complaint as true and looking to the

23   "economic reality" of the working relationship, Plaintiffs'

24   have established that each Defendant was their employer, and

25   thus liable under the FLSA and NYLL, for some period of time.

1   Although the facts pleaded in the Amended Complaint establish

2   that no individual Defendant can be held liable for the entire

3   period at issue, Plaintiffs have adequately described the

4   period during which each set of Defendants employed each

5   Plaintiffs and is responsible for each violation described

6   above.

7   f.  Attorneys' Fees and Costs

8           I will not review the general law applicable to the

9   assessment of attorneys' fees and out-of-pocket expenses in

10  this case.  Those are well established.  I will simply note

11  that because Plaintiffs are the prevailing parties both under

12  the FLSA and the NYLL, they are entitled to attorneys' fees.  I

13  must, however, assess whether or not the amount of the

14  attorneys' fees that are requested here are appropriate and in

15  line with the prevailing rates for litigators with commensurate

16  experience in this District.

17          Plaintiffs have requested $32,007.50 in attorneys'

18  fees and $971.92 in costs incurred during this litigation.

19  Both attorneys from Catholic Migration Services who have billed

20  time to this matter submitted their contemporaneous time

21  records.  The timesheets specify the date, the hours expended,

22  and contain a sufficiently detailed description of the nature

23  of the work done.  I have reviewed the timesheets and billing

24  entries and find that the hours expended on each itemized entry

25  are reasonable.

1    David Colodny billed 28.3 hours to this matter.  Mr

2  Colodny is the Director of Legal Services at Catholic Migration

3  Services.  Mr. Colodny has spent more than eighteen years in

4  the legal services community providing legal representation to

5  recent immigrants.  Immediately prior to joining Catholic

6  Migration Services, Mr. Colodny was a supervising attorney at

7  the Urban Justice Center (UJC), where he managed their workers'

8  rights program.  During his eleven years at UJC, Mr. Colodny

9  represented immigrant workers with a variety of

10  employment-related claims in federal and state courts and

11  administrative agency investigations. Before working at UJC,

12  Mr. Colodny was the Deputy Director and Director of Legal

13  Services at the D.C. Employment Justice Center (2001-2005) and

14  an associate at the Washington, D.C., based law firm Patton

15  Boggs LLP (1995-2000).  Mr. Colodny was also an adjunct

16  professor of clinical law at the New York University School of

17  Law (2008-2010).  Mr. Colodny received his B.A. from Duke

18  University and his J.D. from Georgetown University Law Center.

19  He first became a member of the bar in 1995 in Maryland and has

20  been a member of the New York bar since 2006.

21    Thomas Power billed 88.8 hours to this matter.  Mr.

22  Power is a staff attorney with the Catholic Migration Services,

23  where he represents workers in wage an hour claims and other

24  employment matters. He joined Catholic Migration Services in

25  2016 after graduating from law school.  Mr. Power graduated

J9IAACAOC                Conference

from CUNY School of Law in 2016 where he served as the Managing

Editor of the Law Review.  In law school, Mr. Power

participated in a clinic and held two internships involving

workers' rights.

          I'm going to approve the amount that's requested here.

I am specifically not endorsing the hourly rates described.

They are high relative to other rates that have been approved

by courts in this district for employment and the Eastern

District for employment matters.  And nonetheless, given my

evaluation of all of the relevant factors, I believe that the

hourly rates are, I should say the aggregate amount of fees

requested here are reasonable.

          The time sheets provided detailed descriptions of the

costs which include filing fees, service fees, postage costs

and copy costs.

          With respect to Plaintiffs' costs of litigation, I

also find that they are reasonable.  The timesheets provide

detailed descriptions of the costs, which include filing fees,

service fees, postage costs, and copy costs.  All of these fees

are reasonably related to the litigation of this matter and are

typical costs charged to a client.  Therefore, I will award

Plaintiffs a total of $971.92.  With respect to the attorney's

fees on a blended basis, the amount that is charged is I

believe reasonable which is part of the reason why I determined

that the fees requested are reasonable under these

1    circumstances.

2    IV.                              CONCLUSION

3         For the reasons just stated, Plaintiffs' motion for a

4    default judgment is granted and judgment shall enter against

5    Defendants in the total amount of $849,842.45.

6         Individually, each plaintiff shall be awarded the

7    following with respect to the principle amount of their direct

8    damages against the Defendants.

9    "                    Jin Ming Cao:  $64,284.55.

10   "                    Zhuo Ji Zou:  $57,843.68

11   "                    Jian Min Wu:  $61,212.46

12   "                    Jian Ming Feng:  $59,388.37

13   "                    Qi Wen Huang:  $61,646.74

14   "                    Shun Lai Mei:  $56,268.56

15   "                    Wai Fong Cheong:  $56,911.29

16   "                    Pei Yun Chen:  $58,612.80

17   "                    Wood Chong Lee:  $55,948.75

18   "                    Yan Hua Liu:  $53,576.41

19   "                    Zhi Hui Liu:  $55,724.63

20   "                    Wei Guo Cen:  $59,280.19

21   "                    Jie Fang Ye  $63,135.01

22   "                    Chang Sheng Li:  $55,665.55

23   "                    Zhuo Shong Lao:  $51,761.87

24   "                    Xiao Li Zhu:  $2,471.68

25   "                    Shao Wan Su:  $2,471.68

1     "                               Qiu Yue Liu:  $2,471.68

2     "                               Yan Er Wu:  $2,471.68

3    Defendants are jointly and severally liable for portions of

4    each plaintiff's award as I will describe in the order of

5    default judgment that I will issue either today or tomorrow.

6         They are jointly and severally liable for attorneys'

7    fees as counsel has described and I won't include a reference

8    to that effect in the proposed order of judgment.

9         The order of judgment that the parties presented to

10   the Court previously I think adequately addresses the concerns

11   that we discussed at our prior conference.  I thank you for

12   taking up the work involved in segregating the joint and

13   several liability appropriately across defendants and time

14   periods.

15        Counsel, is there anything else that we should take up

16   here?

17        MR. POWER:  Your Honor, I just have a brief question

18   about the aggregate damage awards.

19        THE COURT:  Yes.

20        MR. POWER:  It's four plaintiffs.  The four plaintiffs

21   that I am referring to are Xiao Li Zhu, Shao Wan Su, Qui Yue

22   Liu and Yan Er Wu.

23        THE COURT:  Thank you.

24        MR. POWER:  The last four plaintiffs I believe that

25   for each of them you provided an aggregate damage award of, if

1    I'm not mistaken, $2,471.68.  Just looking through the revised

2    proposed default judgment the amount that I come to would be an

3    amount of $1,471.68 and then there is an additional five

4    thousand damages of in statutory penalty for each of the two

5    categories of penalties.

6              THE COURT:  Thank you.

7              MR. POWER:  The calculation that I've come to is

8    $11,471.68.

9              (Pause)

10             THE COURT:  Thank you very much, counsel.

11             You're right.  The math was off in the calculation

12   that I just read out.  I will correct that.  I should correct

13   it with respect to each of the four plaintiffs who you describe

14   as to each the proper amount should be $11,471.68.  When I say

15   "as to each" I am referring to Plaintiffs Xiao Li Zhu, Shao Wan

16   Su, Qui Yue Liu and Yan Er Wu.

17             Let me reevaluate the aggregate amount of the judgment

18   with that information.  It should be $36,000 more than the

19   number I told you previously which would be $849,878.45.

20             Counsel, is that accurate?

21             MR. POWER:  I believe so, your Honor.

22             THE COURT:  OK.  Thank you.

23             Anything else that we should take up here?

24             MR. POWER:  Nothing further, your Honor.

25             THE COURT:  Good.  Thank you, all.  I will enter the

1   order of judgment later today I expect.  I thank you very much

2   for being so responsive to my comments at the last conference

3   and for taking up the work of revising the order to reflect.

4   It was a complicated set of calculations.  I appreciate the

5   quality of the work here.

6           This proceeding is adjourned.

7           (Adjourned)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25